UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

POLLIS HERNANDEZ                                              CIVIL ACTION

VERSUS                                                         NO. 19-287

WARDEN VANNOY                                                 SECTION: "G"(1)

## REPORT AND RECOMMENDATION

Petitioner, Pollis Hernandez, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On November 4, 1997, petitioner was convicted of second degree murder under Louisiana law.[1] On November 17, 1997, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.[2] The Louisiana Fifth Circuit Court of Appeal affirmed his conviction and sentence on May 19, 1999.[3] The Louisiana Supreme Court then denied his related writ application on November 12, 1999.[4]

On August 6, 2003, petitioner filed a "Motion to Vacate Conviction" with the state district court.[5] That motion was denied on August 14, 2003.[6]

---

[1] State Rec., Vol. 7 of 9, transcript of November 4, 1997, p. 46; State Rec., Vol. 3 of 9, minute entry dated November 4, 1997; State Rec., Vol. 3 of 9, jury verdict form.
[2] State Rec., Vol. 7 of 9, transcript of November 17, 1997; State Rec., Vol. 3 of 9, minute entry dated November 17, 1997.
[3] State v. Hernandez, 735 So. 2d 888 (La. App. 5th Cir. 1999); State Rec., Vol. 1 of 9.
[4] State v. Hernandez, 750 So. 2d 194 (La. 1999); State Rec., Vol. 9 of 9.
[5] State Rec., Vol. 1 of 9. Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing by a *pro se* prisoner, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Because that date cannot be gleaned from the state court record with respect to the *pro se* filings in this case, the Court will simply use the signature date of the filings as the filing date, in that the filings were obviously placed in the mail no earlier than the date they were signed.
[6] State Rec., Vol. 1 of 9, Order dated August 14, 2003.

On June 27, 2005, petitioner filed a "Motion for Production of Documents" with the state district court.[7] That motion was denied on July 5, 2005.[8]

On April 27, 2007, petitioner filed a "Petition for Writ of Mandamus" with the state district court.[9] That petition was denied on May 11, 2007.[10]

On September 27, 2016, petitioner filed a "Motion to Show Cause or Motion in Arrest of Judgment or State Habeas Corpus" with the state district court.[11] That motion was denied on October 12, 2016.[12] He then filed a motion for reconsideration[13] which was denied on November 14, 2016.[14] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on January 3, 2017,[15] and by the Louisiana Supreme Court on September 14, 2018.[16] On December 3, 2018, the Louisiana Supreme Court also refused to consider his application for reconsideration.[17]

On January 14, 2019, petitioner filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.[18] The state filed a response arguing that the application is

---

[7] State Rec. Vol. 1 of 9.
[8] State Rec., Vol. 1 of 9, Order dated July 5, 2005.
[9] State Rec., Vol. 1 of 9.
[10] State Rec., Vol. 1 of 9, Order dated May 11, 2007.
[11] State Rec., Vol. 1 of 9.
[12] State Rec., Vol. 1 of 9, Order dated October 12, 2016.
[13] State Rec., Vol. 1 of 9.
[14] State Rec., Vol. 1 of 9, Order dated November 14, 2016.
[15] Hernandez v. State, No. 16-KH-711 (La. App. 5th Cir. Jan. 3, 2017); State Rec., Vol. 1 of 9.
[16] State ex rel. Hernandez v. State, 252 So. 3d 465 (La. 2018); State Rec., Vol. 1 of 9.
[17] State ex rel. Hernandez v. State, 257 So. 3d 190 (La. 2018); State Rec., Vol. 1 of 9.
[18] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner has declared under penalty of perjury that his application was placed in the prison mailing system on January 14, 2019. Rec. Doc. 1, p. 15.

untimely.[19]  Petitioner then filed a "Motion for Default Judgment with Request for Immediate Release"[20] and an "Objection and Rebuttal to the D.A.'s Response to [the] Habeas Petition."[21]

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner is generally required to bring his § 2254 claims within one (1) year of the date on which his underlying state criminal judgment became "final."  28 U.S.C. § 2244(d)(1)(A).[22]  With respect to determining the date of finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

---

[19] Rec. Doc. 9.

[20] Rec. Doc. 10.  To the extent that petitioner is in fact requesting the entry of a default judgment, that request should be **DENIED**.  The state filed a timely response and was never in default.  In any event, even if that were not the case, "[d]efault judgments are not appropriate in habeas corpus cases.  A habeas petitioner is not entitled to release because of the state's tardiness in responding to the petition."  Lemons v. Collins, No. 92-4621, 1993 WL 152278, at *1 (5th Cir. Mar. 9, 1993) (citation omitted); accord McCoy v. Fisher, Civ. Action No. 2:15-CV-120, 2016 WL 8738276, at *1 (S.D. Miss. Feb. 12, 2016), adopted, 2016 WL 8738278 (S.D. Miss. Mar. 1, 2016); Smith v. Director, TDCJ-CID, Civ. Action No. 6:09cv172, 2010 WL 695803, at *1 (E.D. Tex. Feb. 18, 2010); Mitchell v. Quarterman, Civ. Action No. C-08-52, 2008 WL 3001636 (S.D. Tex. Aug. 1, 2008).

[21] Rec. Doc. 11.

[22] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events that can trigger a delayed commencement of the statute of limitations in some circumstances, those alternative provisions are not applicable in the instant case.  The Court expressly notes that petitioner claims that his federal application should be considered timely because he "just became aware of" the legal basis for his claim that his indictment was constitutionally infirm.  Rec. Doc. 1, p. 13.  However, that is of no moment for the purposes of § 2244(d)(1).  While § 2244(d)(1)(D) delays the commencement of the statute of limitations until the *"factual predicate"* of a petitioner's claim could have been discovered, it does not delay the commencement until the point at which a petitioner discovers a *legal argument* which could be asserted.  Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) ("[Petitioner] proposes that the year to file a federal petition begins when a prisoner *actually understands* what legal theories are available.  That is not what § 2244(d)(1) says. … Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance."); Johnson v. Gunnels, No. 1:13-cv-3156, 2014 WL 5307604, at *5 (N.D. Ga. Oct. 16, 2014); Esteen v. Cain, No. 09-5450, 2010 WL 497764, at *2 n.24 (E.D. La. Feb. 5, 2010); Batiste v. Louisiana, Civ. Action No. 09-2558, 2009 WL 1649476, at *3 (E.D. La. June 10, 2009).

As noted, the Louisiana Supreme Court denied petitioner's direct-review writ application on November 12, 1999. Therefore, his state criminal judgment became final for AEDPA purposes on February 10, 2000. As a result, his one-year federal limitations period commenced on that date and then expired on February 12, 2001,[23] unless that deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations provided in § 2244, the AEDPA expressly states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). However, petitioner had no such applications pending before the state courts at any time during the applicable one-year period ending on February 12, 2001. Therefore, he clearly is not entitled to statutory tolling.[24]

The Court must next consider equitable tolling. The United States Supreme Court has expressly held that the AEDPA's statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645 (2010). However, "equitable tolling is unavailable in most cases …."

---

[23] The Court is aware that, because 2000 was a leap year, the three-hundred-sixty-fifth day of petitioner's one-year period was Friday, February 9, 2001. However, courts have held that it is the "anniversary date" on which the AEDPA's statute of limitations expires, regardless of the existence of an additional day due to a leap year. See, e.g., United States v. Hurst, 322 F.3d 1256, 1261-62 (10th Cir. 2003); United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000); Wilson v. LeBlanc, Civ. Action No. 12-2577, 2013 WL 4648474, at *2 n.14 (E.D. La. Aug. 29, 2013); Zeno v. Louisiana, Civ. Action No. 06-4096, 2009 WL 3190461, at *3 n.17 (E.D. La. Sept. 30, 2009); Brian R. Means, Federal Habeas Manual § 9A:130 (2018). Moreover, because the "anniversary date" of February 10, 2001, fell on a Saturday, the federal limitations period here was extended through the following Monday, February 12, 2001. See Flanagan v. Johnson, 154 F.3d 196, 202 (5th Cir. 1998) ("We hold that [Fed.R.Civ.P.] 6(a) applies to the computation of the one year limitation period in § 2244(d) of AEDPA."); Fed.R.Civ.P. 6(a) (if the last day of an applicable period is a Saturday, a Sunday, a legal holiday, or a day when the clerk's office is inaccessible, the period runs until the end of the next day that is not one of those days).

[24] Although petitioner subsequently filed various post-conviction motions and applications beginning in 2003, such filings after the expiration of the federal statute of limitations have no bearing on § 2244(d)(2) tolling determinations. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000); Magee v. Cain, Civ. Action No. 99-3867, 2000 WL 1023423, at *4 (E.D. La. July 24, 2000), aff'd, 253 F.3d 702 (5th Cir. 2001); Williams v. Cain, Civ. Action No. 00-536, 2000 WL 863132, at *2 (E.D. La. June 27, 2000). Simply put: once the federal limitations period has expired, "[t]here [i]s nothing to toll." Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008).

Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); accord Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in *rare and exceptional* circumstances" (emphasis added)).  Indeed, "a petitioner is entitled to equitable tolling only if he shows both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649 (internal quotation marks omitted).  A petitioner bears the burden of proof to establish entitlement to equitable tolling.  Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Here, petitioner claims that his federal application should be considered timely because he "just became aware of" the legal basis for his claim that his indictment was constitutionally infirm.[25]  However, to the extent that allegation may be interpreted as an argument for equitable tolling, it should be rejected.  It is clear that a prisoner's *pro se* status, lack of legal training, and mere ignorance of the law do not constitute rare and exceptional circumstances warranting equitable tolling.  See, e.g., Felder v. Johnson, 204 F.3d 168, 171-72 (5th Cir. 2000); accord Gonzales v. Wilkinson, 269 F. App'x 481, 486 (5th Cir. 2008).

Lastly, the Court notes that a petitioner can overcome the AEDPA's statute of limitations by making a convincing claim of "actual innocence" under McQuiggin v. Perkins, 569 U.S. 383 (2013).  In Perkins, the United States Supreme Court held:

> This case concerns the "actual innocence" gateway to federal habeas review applied in Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and further explained in House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006).  In those cases, a convincing showing of actual innocence enabled habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims.  Here, the question arises in the context of 28 U.S.C. § 2244(d)(1), the statute of limitations on federal habeas petitions prescribed in the Antiterrorism and Effective Death Penalty Act of 1996.  Specifically, ... can the

---

[25] Rec. Doc. 1, p. 13.

>   time bar be overcome by a convincing showing that [the petitioner] committed no crime?
>
>   We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup, 513 U.S., at 329, 115 S.Ct. 851; see House, 547 U.S., at 538, 126 S.Ct. 2064 (emphasizing that the Schlup standard is "demanding" and seldom met).

Perkins, 569 U.S. at 386.

Here, petitioner has not invoked Perkins. However, in the event he does so in any objections to this Report and Recommendation, the undersigned finds that he has not made the showing required under Perkins for the following reasons.

Here, petitioner was convicted of the second degree murder of his ex-wife, Donna Comardelle. In pertinent part, Louisiana law provides "Second degree murder is the killing of a human being … [w]hen the offender has a specific intent to kill or to inflict great bodily harm …." La. Rev. Stat. Ann. § 14:30.1(A)(1). Under Louisiana law, "[s]pecific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person." State v. Neal, 796 So. 2d 649, 657 (La. 2001).

In assessing a petitioner's claim of actual innocence, a court normally first examines the evidence presented at trial and on which the conviction was based. See, e.g., Johnson v. Cain, Civ. Action No. 14-543, 2015 WL 4528889, at *3 (E.D. La. July 27, 2015), aff'd, 667 F. App'x 474 (5th Cir. 2016); Lyles v. Tanner, Civ. Action No. 13-655, 2014 WL 4674673, at *6 (E.D. La. Sept.

6

17, 2014). In the instant case, the Louisiana Fifth Circuit Court of Appeal summarized that evidence as follows:

> Evidence presented at trial shows that the defendant went to the victim's workplace and, in full view of her co-workers, opened a package, withdrew a gun, and shot her in the back. The force of the bullet spun her around and Ms. Comardelle fell to the ground on her back. Defendant stood over her and shot her again, this time hitting her in the arm and breast. Defendant then got into a car driven by the co-defendant, Harry Dempster, and the two sped off. Ms. Comardelle was taken to a nearby hospital where she was pronounced dead.
> Mr. Dempster cooperated with police investigators and helped them find the package, wrapping paper, and gun used by the defendant in the crime and discarded afterward. The defendant was subsequently arrested at the home of his uncle.[26]

The United States Supreme Court has explained that, in order to assert a credible claim of actual innocence, a petitioner is required "to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995).

In the instant case, petitioner presents no new evidence whatsoever. Therefore, he cannot meet "the threshold requirement" for Perkins to apply, i.e. a showing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" Perkins, 569 U.S. at 386 (quoting Schlup, 513 U.S. at 329). Accordingly, Perkins does not aid him.

Because petitioner is not entitled to statutory tolling, and because he has not established that he is eligible for equitable tolling or that he is actually innocent, his federal application for

---

[26] State v. Hernandez, 735 So. 2d 888, 891 (La. App. 5th Cir. 1999); State Rec., Vol. 1 of 9.

habeas corpus relief had to be filed no later than **February 12, 2001**, in order to be timely. His application was not filed until **January 14, 2019**, and, therefore, it is untimely.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Pollis Hernandez be **DISMISSED WITH PREJUDICE**.

It is **FURTHER RECOMMENDED** that petitioner's "Motion for Default Judgment with Request for Immediate Release," Rec. Doc. 10, be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[27]

New Orleans, Louisiana, this __26th__ day of June, 2019.

_/s/ Janis Van Meerveld_
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[27] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.